***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on October 8, 2007, the date of injury.
2. An employment relationship existed between plaintiff and defendant-employer on October 8, 2007.
3. At the time of plaintiff's injury, defendant-employer was self-insured with Gallagher Bassett Services, Inc. the administrator.
4. The date of plaintiff's alleged injury was October 8, 2007
5. Defendant denied this claim.
6. Plaintiff's average weekly wage is $632.09, and the weekly compensation rate is $421.41.
 ***********
The following were stipulated into evidence at the hearing as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. A collection of documents including the Industrial Commission Forms filed in this matter and plaintiff's medical records, collectively paginated 1-45 and marked as stipulated exhibit 2.
 c. A confidentiality document marked as stipulated exhibit 3.
 d. A Safety Investigation report marked as stipulated exhibit 4.
 e. Defendant's responses to plaintiff's interrogatories and request for production of documents, marked as stipulated exhibit 5. *Page 3 
 f. Plaintiff's responses to defendant's interrogatories and request for production of documents, marked as stipulated exhibit 6.
 g. The transcript of a telephonic interview of plaintiff undertaken in this matter, dated February 18, 2008, marked as stipulated exhibit 7.
 h. A letter to plaintiff from defendant-employer dated November 16, 2007 and marked as stipulated exhibit 8.
 i. A video in DVD format marked as stipulated exhibit 9.
 ***********
The following were marked and received into evidence as:
 EXHIBITS a. A document labeled "LVP Packaging Schedule" marked as defendant's exhibit 1.
 b. A certified copy of plaintiff's North Carolina Employment Security Commission Records, marked as defendant's exhibit 2.
 *********** ISSUE PRESENTED
Did plaintiff suffer a compensable injury by accident or occupational disease, and, if so, to what medical treatment and/or Workers' Compensation benefits is plaintiff entitled, if any?
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff was employed by defendant as a finishing department production operator. Defendant is a pharmaceutical manufacturer. Plaintiff's vocational history prior to her work for defendant includes over ten years of work as a Certified CNA.
2. Defendant's finishing department consists of six work stations that are staffed by production operators. All production operators are trained to work all stations. A production operator normally rotates through four stations during a ten-hour shift, spending approximately two and a half hours per shift at each station. Production operators follow a rotation schedule and do not work at all of the stations daily.
3. Station one is the bottle-loading station. There are two positions at this station: bottle loader and cart loader. At this station boxes of bottles are stacked on carts. The approximate lifting requirement at this station during the common production runs is between 25 and 40 pounds.
4. Station two is the basket unloading position. The workers at this station use a hydraulic lift to unload the stacked bottles from the cart and move them onto a conveyor belt. The hydraulic lift does all the work at this station. The weight of the bottles lifted does not affect the amount of force needed to operate the hydraulic lift.
5. The third station is the inspection area. The bottles to be inspected weigh between .4 and two pounds. Minimal lifting is required at this station.
6. The bottle-packing position is the fourth station in the finishing department rotation. Minimal lifting is required at this station.
7. The fifth station in the rotation is the skid-stacking position. The production operator at this station uses a pallet jack that allows the operator to load boxes at hip level and *Page 5 
adjust the skid to keep it at that level. The weight range of the full boxes varies from less than five pounds to approximately 25 pounds.
8. The last station is the box-making position. Here, corrugate cardboard is loaded onto the conveyor belt line. A piece of equipment then erects the box, and the production operator places corrugate inserts into the box. At this station, the only materials being handled are very lightweight cardboard inserts.
9. On October 8, 2007 plaintiff was working at station one performing the position of cart loader. Plaintiff felt something pop in her right shoulder as she lifted a set of bottles onto the cart. Nothing unusual or out of the ordinary occurred, and there was no interruption of her normal work routine. Defendant filed a Form 61 dated November 9, 2007.
10. Plaintiff testified that she experienced a sudden, rather then gradual, onset of pain. Prior to October 8, 2007, plaintiff had never experienced any problems with her shoulder. The etiology of plaintiff's shoulder problems was not a gradual disease process, but rather was an acute injury that occurred on October 8, 2007.
11. Plaintiff was seen at Clayton Medical Associates on October 12, 2007, reporting that she experienced a pop in her right shoulder while lifting cartons of bottles on October 8, 2007, and that she suffered subsequent pain. She was released to return to work with restrictions. These restrictions were to last one week. Plaintiff was also released to return to work at light-duty after a October 19, 2007 appointment at Clayton Medical Associates and again on October 26, 2007 by Dr. Lyman Smith at Raleigh Orthopaedics. Defendant accommodated plaintiff's restrictions and plaintiff returned to work on October 12, 2007 at light duty in the "packaging room." *Page 6 
12. Although multiple medical professionals identified light-duty work as appropriate for plaintiff, plaintiff stopped working on October 29, 2007. By letter to plaintiff dated November 16, 2007, defendant documented that, given plaintiff's work stoppage notwithstanding her medical release to return to light duty work, plaintiff would be deemed to have abandoned her job and to have voluntarily resigned from defendant.
13. Plaintiff did some secretarial work for her husband's bail bonds business in September and November 2008.
14. Dr. David Rockwell diagnosed a small intrasubstance tear of the supraspinatus and performed right shoulder surgery on December 8, 2008. He released plaintiff to return to work with restrictions at appointments in February and March 2009.
15. Dr. Lyman Scott-William Smith testified by deposition that plaintiff experienced an "acute onset of pain" on October 8, 2007 and that there were no indications that plaintiff experienced a non-acute condition. Dr. Smith, who had observed video of plaintiff's job tasks with defendant, also testified that the tasks at stations three and four were within the restrictions he assigned plaintiff on October 26, 2007.
16. Although Dr. Rockwell testified that plaintiff's job with defendant caused plaintiff to suffer bursitis tendonitis and that her job with defendant placed her at a greater risk of suffering bursitis tendonitis than the general public, he had not seen the video of the job tasks in question and had never been to defendant's plant to observe the work done. Dr. Rockwell's records reflect that he released plaintiff on a prn basis as of March 19, 2009, and that he has never assigned plaintiff any permanent impairment rating.
17. Vocational Counselor Anthony Enoch testified by deposition that there was suitable employment for plaintiff within her restrictions in the Goldsboro area. *Page 7 
18. Having considered the testimony of Dr. Smith and Dr. Rockwell, taken with their expertise, relative treatment histories with plaintiff, and knowledge of the physical requirements of defendant-employer's jobs, the Full Commission gives greater weight to the testimony and expert opinions of Dr. Smith.
19. Plaintiff received unemployment benefits from the Employment Security Commission beginning January 21, 2008 through the date of the hearing and continuing.
20. As of the time of the hearing before the Deputy Commissioner, plaintiff was attending Community College in an eight-month program after which she would have a state certificate enabling her to work in a pharmacy or a hospital. Plaintiff hoped to have this certificate in July 2009.
21. Plaintiff's job with defendant required her, as a customary duty, to stack bottles on carts. When plaintiff was injured on October 8, 2007, she was using her normal method of stacking bottles on the cart in the usual way. There were no unusual conditions that led to unexpected consequences.
22. Although plaintiff sustained an injury while working for defendant on October 8, 2007, this injury was not the result of an accident as defined by the North Carolina Workers' Compensation Act.
23. There is insufficient evidence of record from which to determine by its greater weight that plaintiff has suffered a compensable injury by accident arising out of and in the course of her employment with defendant.
24. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant caused her to suffer a compensable occupational disease. *Page 8 
25. Plaintiff's employment with defendant-employer was terminated in accordance with established policies. An uninjured person would have been terminated for similar conduct.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements. Whitfield v. Lab Corp. of Amer.,158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003); Harvey v.Raleigh Police Department, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 683, 195 S.E.2d 141, 143, cert. denied283 N.C. 585, 197 S.E.2d 873 (1973).
2. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an "accident" as defined in the statute. N.C. Gen. Stat. § 97-2(6).
3. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather it must involve the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. N.C. Gen. Stat. § 97-2(6). Harding v.Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109 (1962).
4. Plaintiff was performing her usual duties in the usual way on October 8, 2007, with no interruption of the work routine, and therefore did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). *Page 9 
5. In this case, plaintiff has failed to meet her burden of proving by the greater weight of the evidence that she sustained a compensable injury by accident arising out of and in the course of her employment with defendant to her shoulder on or about October 8, 2007. N.C. Gen. Stat. §§ 97-2(6), 97-2(9);Harvey v. Raleigh Police Department, 96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989); Gaddy v. Kern,17 N.C. App. 680, 195 S.E.2d 141, 143, cert denied283 N.C. 585, 197 S.E.2d 873 (1973).
6. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), a plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Fann v.Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
7. In this case, plaintiff has not proven by the greater weight of the evidence that her employment with defendant placed her at greater risk than the general public of contracting bursitis tendonitis or any other occupational disease. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
8. In this case, plaintiff has not proven by the greater weight of the evidence that her employment with defendant caused her to contract bursitis tendonitis or any other occupational disease. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), *Page 10 Fann v. Burlington Indust.,59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
9. Plaintiff was terminated for reasons, unrelated to her workplace incident, for which any other employee would have been terminated. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 587 (1996).
10. Plaintiff has the burden of proving disability, and plaintiff must prove both the existence and the extent of disability. Disability is defined by the Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." N.C. Gen. Stat. § 97-2(9). In this case plaintiff failed to meet her burden of proving the existence and extent of disability that resulted from a work-related injury. N.C. Gen. Stat. § 97-2(9); Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E. 2d 682 (1982); Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001); Russell v.Lowes Prod. Distrib., 108 N.C. App. 762 (1993).
11. Given the foregoing, plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1, et seq.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 ORDER
1. Under the law, this claim must be, and hereby is DENIED.
2. Hearing costs have already been assessed pursuant to North Carolina Workers' Compensation Rule 611(6). *Page 11 
This the 8th day of January, 2010.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/__________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
 S/__________________________ DANNY LEE McDONALD COMMISSIONER